[No. 11340–2–I.   Division One.   December 14, 1983.]

The State of Washington, *Respondent,* v. Nina
Dean Schneider, *Appellant.*

*Nina Dean Schneider,* pro se, and *David R. Wohl* of *Washington Appellate Defender Association,* for appellant.

*David F. Thiele, Prosecuting Attorney,* and *David L. Jamieson, Jr., Deputy,* for respondent.

DURHAM, A.C.J.—Nina Dean Schneider appeals her convictions of criminal solicitation of murder in the first degree, burglary in the second degree and conspiracy to commit burglary in the second degree.[1] She claims that she was legally incapable of committing burglary because she owned a community interest in the house in question, and that her conviction for solicitation of murder should have merged with her conviction for attempted murder. We affirm.

In May of 1980, Nina Schneider and her husband Larry Schneider separated. Larry Schneider moved into a trailer behind a rental house owned by the Schneiders. The house was located at Bush Point, on Whidbey Island, several miles away from Mrs. Schneider's residence. Mr. Schneider stayed in the trailer until October of 1980, when he had a heart attack. He then moved into the rental house and the tenant, Janna Rome, nursed Mr. Schneider back to health. In January of 1981, Mrs. Schneider filed a petition for dis-

---

[1]The jury also convicted Mrs. Schneider of attempted first degree murder. She does not appeal this conviction.

solution of the marriage.

In February of 1981, Mr. Schneider left for a vacation in California. The tenant, Ms. Rome, was apparently away at this time also. On February 28, a neighbor who had been asked to watch the house noticed that the door was ajar and the jamb had been split. The neighbor called the sheriff, and, when the deputies left, she had the door nailed shut until Mr. Schneider's return. When Mr. Schneider returned several days later he listed as missing a dinghy, a tape recorder, a calculator, a coin collection and some change. The tape recorder belonged to Ms. Rome.

In April of 1981, Mr. Schneider noticed that his Jeep was running poorly. He took it to a service station, where the mechanic discovered a wire attached to a spark plug and running to the back of the Jeep into a fuel tank. The police were called to investigate the Jeep.

Prior to this time, Mrs. Schneider had been the youth leader at the local church. In this capacity, she met a number of teenage boys, almost all of whom had criminal histories. Six of these boys were arrested in March and April of 1981 in connection with the burglary of the Schneider house at Bush Point, and with the attempt to kill Mr. Schneider. In July of 1981, Mrs. Schneider was charged with attempted first degree murder, criminal solicitation of murder, second degree burglary as an accomplice and criminal conspiracy to commit second degree burglary. At Mrs. Schneider's trial the six boys testified against her. Four of them testified that they committed the burglary of the Bush Point house with Mrs. Schneider's aid and approval. They testified that she drove them to the house and back after the burglary. Two of the boys testified that Mrs. Schneider had offered them money to kill Mr. Schneider.

The jury found Mrs. Schneider guilty as charged on all counts. She was sentenced to 20 years' imprisonment, with all the sentences to run concurrently. Mrs. Schneider appeals her convictions for solicitation of first degree murder, second degree burglary, and conspiracy to commit burglary.

■ As a threshold matter, the State argues that the concurrent sentence doctrine precludes review of this case. Under that doctrine, an appellate court need not consider the validity of multiple convictions when the sentences imposed are concurrent. *State v. Briceno,* 33 Wn. App. 101, 651 P.2d 1093 (1982). However, the doctrine is not a jurisdictional bar, but is a matter of judicial convenience and discretion. *State v. Eppens,* 30 Wn. App. 119, 124, 633 P.2d 92 (1981). Furthermore, this court has stated, in declining to invoke the concurrent sentence doctrine:

> We note . . . that the concurrent sentence rule fails to take into account the many punitive aspects of a criminal conviction besides the possible maximum sentence.

*State v. Birgen,* 33 Wn. App. 1, 3, 651 P.2d 240 (1982). For this reason, we decline to invoke the doctrine in this case.

Schneider first contends that she cannot be convicted as an accomplice and conspirator for the burglary of her estranged husband's residence, because the residence was community property at the time. In particular, she contends that the State failed to introduce evidence to show that the entry of the house was "unlawful." As stated in the statutory definition of second degree burglary:

> A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains *unlawfully* in a building other than a vehicle.

(Italics ours.) RCW 9A.52.030(1). The definition of "enters or remains unlawfully" is:

> A person "enters or remains unlawfully" in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain.

RCW 9A.52.010(3). Schneider contends, in effect, that to prove she entered "unlawfully" the State must prove that Mr. Schneider owned the house and Mrs. Schneider did not. Since the house was purchased during the marriage, Schneider contends that the State must "rebut the strong presumption that the house was community property." These contentions are erroneous, because they misconstrue

the nature of the offense of burglary.

██ The law of burglary was designed to protect the dweller, and, hence, the controlling question here is occupancy rather than ownership. *See* R. Perkins, *Criminal Law* 206 (2d ed. 1969). The law in Washington has long reflected this principle:

> "The test, for the purpose of determining in whom the ownership of the premises should be laid in an indictment for burglary, is not the title, but the occupancy or possession at the time the offense was committed."

*State v. Klein,* 195 Wash. 338, 342, 80 P.2d 825 (1938), quoting 9 C.J. *Burglary* § 79, at 1044 (1916). An owner of property can be guilty of burglarizing that property. For example, it is well established that a landlord can be guilty of burglarizing the premises of his tenant. *See, e.g., Bradley v. State,* 244 Ind. 630, 195 N.E.2d 347 (1964). *See also* AGO 10 (1974).

To establish that an entry is "unlawful," the State must introduce evidence that the entrant was "not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(3). In this case, there is sufficient evidence from which a reasonable juror could infer that Schneider was not licensed, invited or privileged to enter the house in question. At the time of the burglary, the house was occupied by a tenant, who had lived there for some time before Mr. Schneider moved in with her. It is also clear that Mrs. Schneider never actually lived in the house during the time in question. Thus, Mrs. Schneider's legal status was analogous to that of a landlord's at the time of the break–in. In addition, Mr. Schneider testified that when he left on vacation before the burglary no one had permission to enter the house except the neighbor, whom he had asked to pick up the mail. Finally, as the State argues, the method of entry—breaking the door latch—is inconsistent with any kind of permissive entry.

██ Schneider's argument that the trial court erred in denying her requested instruction that the burglarized residence was community property is meritless for these same

reasons. The standards to be applied in determining if instructions to the jury are adequate are: (1) the instructions must permit a party to argue his theory of the case, (2) the instructions must not be misleading, and (3) the instructions, when read as a whole, must properly inform the trier of fact on the law. *State v. Gibson,* 32 Wn. App. 217, 222, 646 P.2d 786 (1982). As noted above, the fact that the property burglarized was in community ownership does not by law preclude a burglary conviction of one of the owners. Accordingly, the community property instruction was properly rejected as a misstatement of the law.

Schneider next contends that her contemporaneous conviction of solicitation of murder and attempted murder as an accomplice violates the double jeopardy clause. She relies primarily on the statutory definitions of accomplice liability and criminal solicitation:

> A person is an accomplice of another person in the commission of a crime if:
> (a) With knowledge that it will promote or facilitate the commission of the crime, he
> (i) *solicits,* commands, encourages, or requests such other person *to commit it . . .*

(Italics ours.) RCW 9A.08.020(3).

> A person is guilty of criminal solicitation when, with intent to promote or facilitate the commission of a crime, he offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime or which would establish complicity of such other person in its commission or attempted commission had such crime been attempted or committed.

RCW 9A.28.030(1). Schneider claims that the term "solicits" in the accomplice liability statute incorporates criminal solicitation as a lesser included offense. Thus, she argues, her acts of criminal solicitation and accomplice to murder were, in law and in fact, only one offense. We disagree.

■■ Even if the term "solicits" in the accomplice liability statute does incorporate criminal solicitation, it does not follow that criminal solicitation is a lesser included offense of accomplice crimes. The test for a lesser included

offense focuses on the statutory elements of the greater and lesser crimes, rather than on the facts of the particular case in which the two crimes occur.[2] The Supreme Court has stated the test for a lesser included offense as follows:

> A lesser included offense exists when all of the elements of the lesser offense are *necessary* elements of the greater offense. Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime.

(Citations omitted. Italics ours.) *State v. Roybal,* 82 Wn.2d 577, 583, 512 P.2d 718 (1973). Clearly, it is possible to be an accomplice to attempted murder without having committed criminal solicitation as defined in RCW 9A.28.030. Therefore, solicitation is not a lesser included offense of the crime of attempted murder, and Schneider's contemporaneous conviction of solicitation of murder and attempted murder as an accomplice was not improper.[3]

In her pro se brief, Schneider argues that the credibility of the youths who testified against her was questionable due to numerous inconsistencies in their testimony. She claims that an instruction should have been given regarding these inconsistencies. However, this argument lacks merit. The jury is the sole judge of the credibility of the witnesses, and the judge cannot comment upon the evidence in any way. *State v. Dietrich,* 75 Wn.2d 676, 453 P.2d 654 (1969). Here, the jury was issued standard instructions

---

[2]This test reflects the purpose of the lesser included offense analysis, which is to determine whether the Legislature intended to authorize separate punishments for the two crimes. *See State v. Johnson,* 96 Wn.2d 926, 936–37, 639 P.2d 1332 (1982).

[3]We also note that the factual grounds for the two crimes in this case appear to be distinct. Schneider's offers to pay money to have her husband killed (solicitation) occurred in February and March of 1981. As the State suggests, her accomplice liability is based upon her approval of the murder plan several days before the attempt, as well as apparently loaning her car to the principals on the night of the attempt. When a defendant's acts are factually separable, no multiple punishment question arises. *See State v. Johnson,* 92 Wn.2d 671, 680, 600 P.2d 1249 (1979), *cert. dismissed,* 446 U.S. 948 (1980); *State v. Johnson,* 96 Wn.2d 926, 933–34, 639 P.2d 1332 (1982).

pertaining to credibility of witnesses. It would have been improper for the judge to issue an instruction on the credibility of specific witnesses.

Schneider also argues in her brief that, when the events leading to a trial and conviction are widely publicized, the trial judge has a duty to request a motion for a sequestered jury to protect the defendant's right to a fair and impartial hearing. She has cited no authority in support of this argument, nor are we aware of any.

The judgment is affirmed.

RINGOLD and CORBETT, JJ., concur.