[No. 23290-5-III.   Division Three.   December 20, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. J.P., *Appellant*.

*David N. Gasch*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

¶1 SCHULTHEIS, J. — J.P. was caught crawling out of the window of a vacant home, which was being prepared for sale. He was charged with and adjudicated guilty of residential burglary. He challenges the sufficiency of the evidence, claiming that because the State did not sufficiently establish that the witness it called had authority over the premises, it did not prove unlawful presence or entry. He also claims that he may assert abandonment of property, a defense in the criminal trespass statute, because that defense negates the unlawful entry and presence element of the crime, which is common to both criminal trespass and residential burglary, and residential burglary is a lesser included offense of criminal trespass. We conclude that the State established that the witness it presented had authority over the premises and thereby established unlawful presence and entry. Because we also conclude that the defendant may assert the abandonment defense but the residence was not abandoned here, we affirm.

## FACTS

¶2 Police were dispatched to a burglary-in-progress call at a residence at 1119 North Madelia in Spokane at 8 P.M. on February 9, 2004. Officers took three boys into custody who were seen leaving the residence through a window. Looking through an open window, officers detected the odor of fresh paint and saw paint running down the windows as well as on the walls, countertops, and refrigerator.

¶3 Police identified one of the boys as J.P. and interviewed him. J.P. waived his constitutional rights and gave a statement. He admitted that he painted a leaf-like design

on one of the walls and the two other boys painted on the walls and windows with paint they found inside. When the officers concluded their investigation, they were unable to contact a responsible party to secure the residence. According to procedure, an officer called Spokane City Code Enforcement and reported that the house was "unsecured and abandoned." Clerk's Papers at 18.

¶4 At trial, Sue Melcher, an agent for Tomlinson-Black Realty, testified that in January 2004 she was contracted by Ocwen, a company for which she handles repossessed homes on behalf of the Department of Veterans Affairs, to serve as the listing agent for the residence at issue. Thereafter, she changed the locks on the residence and placed her personal lockbox on the door. On the date of this incident, the only keys to the residence were in Ms. Melcher's possession, and she was the only person with the combination to the lockbox. Ms. Melcher informed the court that she does not know J.P. and she did not give him permission to be inside the residence.

¶5 J.P. was found guilty of third degree malicious mischief and residential burglary. The court entered findings of fact and conclusions of law.

ANALYSIS

¶6 A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We review the evidence to support a juvenile adjudication on a sufficiency challenge in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Ware*, 111 Wn. App. 738, 741, 46 P.3d 280 (2002). The elements may be established by direct or circumstantial evidence; one type of evidence is of no less value than the other. *State v. Thompson*, 88 Wn.2d 13, 16, 558 P.2d 202 (1977); *see State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999). We defer to the

trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

¶7 In order to establish that J.P. committed residential burglary, the State had to prove two elements: (1) that he entered or remained unlawfully in a dwelling, and (2) that he intended to commit a crime against a person or property therein. RCW 9A.52.025; *State v. Stinton*, 121 Wn. App. 569, 573, 89 P.3d 717 (2004). A person enters or remains unlawfully if he does so without license, invitation, or privilege. RCW 9A.52.010(3); *State v. Lopez*, 105 Wn. App. 688, 694-95, 20 P.3d 978 (2001). Only the person who resides in or otherwise has authority over the property may grant permission to enter or remain. *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998).

UNLAWFUL ENTRY/PRESENCE

¶8 J.P. essentially claims on appeal that the testimony of the listing agent was insufficient proof that he entered or remained in the residence unlawfully because the State failed to establish a connection between the listing agent (Ms. Melcher), her employer (Ocwen), and the owner of the residence (Washington Trust Bank).

¶9 At trial, the defense made an evidentiary objection to Ms. Melcher's testimony, arguing that she could not testify as a "legal guardian" of the property without foundation evidence from the owner of the property that she was hired as a real estate agent and had some authority over the property. Report of Proceedings (RP) at 22. The State argued that Ms. Melcher should be allowed to testify concerning her "relationship to the property." RP at 23. The court allowed Ms. Melcher to testify. When the State began to examine Ms. Melcher concerning her employment as a listing agent for the property, the defense objected on the basis of hearsay. That objection was overruled. Ms. Melcher also mentioned she had the listing contract with her, which she testified engaged her services as a listing agent for the property on January 15, 2004. Although the document had

not yet been offered as an exhibit, the defense objected to it as hearsay. The trial court asked the parties to clarify the purpose of the testimony. The defense advised that the State was required to prove there was no permission to enter or remain on the property and the evidence it had provided was hearsay. The State argued that it merely had to prove that the person in control of the property did not grant permission, and it could establish that Ms. Melcher had control. The court ruled that the State would have to provide additional foundation to show that Ms. Melcher had sufficient control and authority for these purposes.

¶10 Ms. Melcher went on to testify that because the house was being repossessed and was unoccupied, once she got the listing contract for the residence, she had the residence re-keyed and she placed a combination lockbox on the front door and it was up to her to decide who would have access to that lockbox, if anyone. She stated that she held the only keys.[1] Ms. Melcher further advised that because the house was not on the market until March 2004, there was no reason for anyone to enter it, and she gave nobody permission to enter the residence including J.P., whom she did not know. J.P. did not argue that his entry or presence was authorized by permission, only that the State failed to prove that he did not have permission.

■ ■ ¶11 The unlawful entry element of burglary may be proved by circumstantial evidence, as may any other element. *State v. McDaniels*, 39 Wn. App. 236, 240, 692 P.2d 894 (1984). Here, J.P. was found crawling out of a window of a locked residence after he admittedly spray-painted graffiti on a wall. The evidence concerning his activity inside and his manner of exit can support an inference that his entry and presence was not "licensed, invited, or otherwise privileged." RCW 9A.52.010(3); *see McDaniels*, 39 Wn. App. at 240; *State v. Woods*, 63 Wn. App. 588, 590-91, 821 P.2d

---

[1] Ms. Melcher testified that the "preservation company" that re-keyed the residence also had keys to the residence. RP at 28. The court found that Ms. Melcher had the only keys. This finding is not challenged. It is a verity. *Ware*, 111 Wn. App. at 742.

1235 (1991); *State v. Schneider*, 36 Wn. App. 237, 241, 673 P.2d 200 (1983).

¶12 The owner was not required to testify that J.P. did not have permission to enter or remain in the residence. *Schneider*, 36 Wn. App. at 241. In fact, the owner of property can herself be guilty of burglarizing her own property under certain circumstances, such as when a landlord burglarizes the premises of her tenant. *Id.* We look to the person with possession or occupancy of the property over the alleged burglar to determine if the accused's presence or entry is lawful. *Id.*

¶13 Here, when giving the oral opinion, the trial judge reviewed the evidence given by Ms. Melcher—that she was in charge of selling the house, placed her locked box on the door, and gave no one permission to be on the property—and specifically determined that "when Ms. Melcher testified she didn't give anyone permission, it was in her rights to do so." RP at 50. This decision was within the court's province after considering the evidence. Once the testimony concerning Ms. Melcher's possession or occupancy of the property over J.P. was admitted and no further objection was raised, the only matter that remained concerning Ms. Melcher's testimony was the weight the trial judge wished to afford it.

¶14 Because the State established that Ms. Melcher had authority over the premises, it proved unlawful presence or entry. The evidence was sufficient.

ABANDONED PROPERTY DEFENSE

¶15 J.P. asserts that the abandonment defense that applies to the first degree criminal trespass statute, RCW 9A-.52.070, is also applicable as a defense to residential burglary.

¶16 RCW 9A.52.090(1) provides that it is a defense to criminal trespass if "[a] building involved in an offense under RCW 9A.52.070 was abandoned." The State properly points out that RCW 9A.52.090 is clearly limited to the crime of criminal trespass by its terms. However, in *City of*

*Bremerton v. Widell*, 146 Wn.2d 561, 570, 51 P.3d 733 (2002), the Washington Supreme Court held:

> Statutory defenses to criminal trespass negate the unlawful presence element of criminal trespass and are therefore not affirmative defenses. Further, the burden is on the State to prove the absence of the defense when a defendant asserts his or her entry was permissible . . . because that defense "negates the requirement for criminal trespass that the entry be unlawful." Thus, once a defendant has offered some evidence that his or her entry was permissible[,] the State bears the burden to prove beyond a reasonable doubt that the defendant lacked license to enter.

(Citations omitted) (quoting *State v. Finley*, 97 Wn. App. 129, 138, 982 P.2d 681 (1999)).

■■ ¶17 Criminal trespass is a lesser included offense of burglary. *State v. Soto*, 45 Wn. App. 839, 841, 727 P.2d 999 (1986). Criminal trespass occurs when a person "knowingly enters or remains unlawfully" in a building. RCW 9A-.52.070. Residential burglary is a criminal trespass with the added element of intent to commit a crime against a person or property therein. RCW 9A.52.025. J.P. argues that because the unlawful entry or presence component of the burglary statute is the same as the unlawful entry or presence aspect of the criminal trespass statute it must be equally negated by the criminal trespass defenses. J.P. persuades us that *Widell* permits him to assert an abandonment defense to residential burglary.

■■ ¶18 The trial court allowed J.P. to assert the abandonment defense. It ruled, however, that the house was vacant but not abandoned at the time. "Abandoned" is not defined by the statute. *See* RCW 9A.52.010, .070. Undefined statutory terms are given their usual and ordinary meaning as may be found in the dictionary. *State v. Sunich*, 76 Wn. App. 202, 206, 884 P.2d 1 (1994). "Abandon" is defined as "to cease to assert or exercise an interest, right, or title to esp[ecially] with the intent of never again resuming or reasserting it" and "to give up . . . by leaving,

withdrawing, ceasing to inhabit, to keep, or to operate often because unable to withstand threatening dangers or encroachments." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2 (1993). "Abandoned" is defined as "given up : DESERTED, FORSAKEN <an [abandoned] child> <an [abandoned] house>." *Id.*

¶19 J.P. argues the State failed to meet its burden simply because police referred to the residence as abandoned for the purposes of notifying code enforcement when they were unable to immediately contact an owner to secure it as was required by police protocol. But the testimony that the home was being prepared for sale was sufficient to show that it was not abandoned in that the owner, Washington Trust Bank, obviously did not intend to surrender the property or its interest in the property due to its condition or for any other reason.

## CONCLUSION

¶20 A reasonable trier of fact could infer that J.P. was not licensed, invited, or privileged to enter or remain at the residence at issue. Because the house was vacant but not abandoned the unlawful entry is not negated by RCW 9A-.52.090(1). We therefore affirm.

KATO, C.J., and SWEENEY, J., concur.