IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 69894-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DONALD DAVID MCKNIGHT, | ) | UNPUBLISHED OPINION |
| AKA DONALD D. ABDICH, | ) | |
| | ) | FILED: April 29, 2013 |
| Appellant. | ) | |

BECKER, J. — Donald McKnight appeals his convictions for first degree burglary with a deadly weapon enhancement, residential burglary, and possessing burglar tools. The charges stemmed from three separate incidents, and McKnight moved to sever the charges. The trial court denied severance after properly balancing the potential for prejudice and the concern for judicial economy. We affirm because the court did not abuse its discretion in denying the motion and McKnight's other claims are meritless.

## CHARGES

*First Degree Burglary with a Deadly Weapon*

On the morning of December 30, 2010, Jennifer Herrman woke up to the sound of her puppy barking in the living room of her Longview house. Hermann

left her three-year-old son sleeping in her bed and got up to investigate. She saw a man rummaging through a drawer in the kitchen. The intruder was wearing a dark hood and carrying a small flashlight and a backpack. She turned on a light and yelled repeatedly, "What are you doing in my house?"

The intruder ran toward Hermann, holding a yellow bar over his head as if to hit her. As he got within three feet of Hermann, she recognized his face and said, "I know who you are." Hermann grabbed the man's backpack. The intruder struck her on the side of the face, knocking her down. Hermann heard her son crying and saw him standing in the living room. Hermann grabbed the yellow club and began hitting the intruder with it and chasing him out of her house. As the man ran, he knocked Hermann's son into a wall and went out the back door.

Although Hermann recognized the intruder's face, she could not immediately remember his name. Days later, she recalled his name and told the investigating officer that it was Donny Abdich who had broken into her home. Abdich also goes by the name Donald McKnight. The officer showed Hermann the pictures of six men, and she singled out McKnight as the intruder.

*Residential Burglary*

On the night of April 12, 2011, Ashley Rae's house, located about seven blocks from Hermann's, was burglarized. Rae was working at a gas station near her home. She asked a co-worker, Brad Lowe, and his friend to drive to her house to pick up something she had forgotten. Lowe testified that when he tried the house key Rae gave him, the front door would not open. Lowe struggled with the door, gave it a shove, and heard something fall on the other side. Once

inside, Lowe discovered that a steak knife had been wedged in the door frame. Lowe then saw a man turn, run toward the back of the house, and escape through an open window. As the intruder ran, he lost a Nike tennis shoe.

The investigating officer, Mike Watts, was unable to retrieve finger prints, but he found two backpacks in the living room. One backpack contained gloves, screwdrivers, pliers, a file, a magnifying glass, a small flashlight, and several documents bearing McKnight's name.

At trial, Lowe identified McKnight, although he initially told Officer Watts he did not think he would be able to. Watts testified that he took the backpack, shoe, and knife to McKnight's mother's house, a few blocks away from Rae's house, to see if she could identify them. He said Dorthea McKnight identified the items as belonging to her son. At trial, Dorthea testified that she only told the officer she thought the backpack was her son's, but she did not know to whom the shoe belonged and was not shown a knife.

*Burglary Tools*

On April 28, 2011, Dorthea called Longview police asking them to remove her son, who did not have permission to be in her house but had crawled in through a back window. The officer who responded arrested McKnight and searched him incident to arrest, finding a Phillips screwdriver, wrench, large file, rod, and Craftsman's tool with a knife on it.

DENIAL OF SEVERANCE

The trial court denied McKnight's motion to sever the first degree burglary charge from the other two charges. After a three-day trial, a jury found McKnight guilty as charged. McKnight first assigns error to the court's denial of severance.

A trial court's refusal to sever charges is reversible only for a manifest abuse of discretion. State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). A defendant seeking severance has the burden of demonstrating that a trial involving both counts would be "so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718. Prejudice may result from joinder if the defendant is embarrassed by the presentation of separate defenses, or if use of a single trial invites the jury to cumulate the evidence to find guilt or infer criminal disposition. State v. Russell, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129 (1995).

In determining whether the potential for prejudice requires severance, a trial court must consider: (1) the strength of the State's evidence on each count, (2) the clarity of the defenses as to each count, (3) the court's instructions to the jury to consider each count separately, and (4) the admissibility of evidence of the other charges even if not joined for trial. Russell, 125 Wn.2d at 63. These same factors are applied by reviewing courts to determine if a trial court's denial of severance was unduly prejudicial. State v. Cotten, 75 Wn. App. 669, 687, 879 P.2d 971 (1994), review denied, 126 Wn.2d 1004 (1995).

Concerning the first factor, McKnight argues the State's evidence on the first degree burglary count was stronger than on the residential burglary charge

4

because Hermann told police she recognized him at first sight. He argues the evidence "was not as compelling on identification" in the residential burglary at Rae's house.

Evidence is sufficiently strong if it would allow a rational jury to find the defendant guilty of each charge independently. State v. Bryant, 89 Wn. App. 857, 867, 950 P.2d 1004 (1998), review denied, 137 Wn.2d 1017 (1999). The evidence in the Rae burglary meets this test, particularly considering the backpack the burglar left in Rae's house that was full of documents with McKnight's name on them. McKnight contends the jury was entitled to believe that the true burglar at Rae's house was someone who had stolen his backpack. This is possible, but unlikely, considering Lowe's identification of McKnight and Dorthea's tentative identification of the backpack as belonging to her son. The jury was also entitled to infer from the documents that McKnight was the burglar at Rae's house and to add that inference to Lowe's identification of McKnight at trial.

As to the second factor, clarity of defenses, McKnight contends on appeal that he would have taken the stand to defend himself against the first degree burglary count involving Hermann, but for his desire to exercise his right to remain silent on the residential burglary at Rae's house. At the hearing on the motion to sever, McKnight's attorney explained there was a potential alibi witness the defense had been unable to locate, and McKnight's "litany of prior convictions" made it undesirable for him to take the stand on the second burglary. "The problem is that if I have to put him on the stand for that count, there is too

much potential bleed over towards Count 1, which is a really serious case -- a really serious count, burglary in the first degree with a deadly weapon enhancement."

A defendant's desire to testify only on one count requires severance only if he makes a convincing showing that he has important testimony to give concerning one count and a strong need to refrain from testifying about another. Russell, 125 Wn.2d at 65 (finding defendant was not unduly prejudiced by joinder of three counts of murder, each involving separate murder; defendant had made no offer of proof as to anticipated testimony); see also State v. Weddel, 29 Wn. App. 461, 468, 629 P.2d 912 ("In the absence of evidence to the contrary, we conclude that the overriding reason why defendant chose not to testify was not his fear of incriminating himself on the attempted burglary count, but rather his realization that the State would use a prior burglary conviction for impeachment."), review denied, 96 Wn.2d 1009 (1981).

McKnight, like the defendant in Russell, made no offer of proof. The record does not indicate what testimony he wanted to give concerning the burglary at Hermann's house. The only comments his attorney made about that burglary were to the effect that McKnight's sister's testimony and the testimony of other witnesses would cast doubt on Hermann's identification of McKnight. McKnight's argument on appeal does not go beyond a general desire to testify as to one count but not the other. As in Russell, absent an offer of proof, we cannot conclude that joinder affected McKnight's decision not to testify. Russell, 125 Wn.2d at 65-66.

6

Concerning the third factor, McKnight challenges instruction 7, which told the jury to "decide each count separately." He contends the instruction falls "miserably short" in telling the jury to parse out the evidence it could consider as to each count because jurors were not specifically told, for example, that they could not consider the paperwork with McKnight's name, which was found at Rae's house, to support the conclusion that he was the intruder at Hermann's house.

Instruction 7 stated, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Instruction 5 told the jury not to "use the fact that the defendant has not testified to infer guilt or to prejudice him in any way." Instruction 6 told them to "consider evidence that a witness has been convicted of a crime only in deciding what weight or credibility to give to the testimony of the witness, and for no other purpose." These are standard pattern instructions. McKnight points to no objection in the record preserving the issue for appeal and does not argue his trial counsel was ineffective for failing to propose an alternative instruction, so he fails to raise a manifest error affecting a constitutional right.

Concerning the fourth factor, cross-admissibility, McKnight argues on appeal that none of the evidence in the first degree burglary at Hermann's house "should have been admissible" in a trial for the burglary at Rae's house because its "sole purpose would have been" to establish guilt through propensity evidence barred by ER 404(b). He cites a trio of cases: State v. Pogue, 104 Wn. App.

7

981, 17 P.3d 1272 (2001) (finding prior conviction for delivery of cocaine was inadmissible under rule about prior bad acts); State v. Acosta, 123 Wn. App. 424, 98 P.3d 503 (2004) (finding criminal history was inadmissible to show state of mind or to support expert opinion and potential for prejudice far outweighed probative value); and State v. Escalona, 49 Wn. App. 251, 742 P.2d 190 (1987) (finding court should have granted mistrial where assault complainant testified as to defendant's record of stabbing someone else).

None of these cases involved severance, and while they do analyze the specific prejudice each defendant encountered, McKnight fails to do the same, to show how he specifically was prejudiced at trial. A more analogous case is Bythrow, where the Supreme Court considered two separate robberies and held that severance was not automatically required where evidence of one would not have been admissible in a separate trial on the other. Bythrow, 114 Wn.2d at 720. In Bythrow, the court determined that the manner in which the two robberies were committed, one of a donut shop and the other of a gas station, was not so unique as to help prove identity under ER 404(b). Bythrow, 114 Wn.2d at 720. Nonetheless, where the issues were relatively simple, the trial was short, and the jury could be reasonably expected to compartmentalize the evidence, "there may be no prejudicial effect from joinder even when the evidence would not have been admissible in separate trials." Bythrow, 114 Wn.2d at 721. "In order to support a finding that the trial court abused its discretion in denying severance, the defendant must be able to point to specific prejudice." Bythrow, 114 Wn.2d at 720.

8

Here, the trial court did find the evidence of the two burglaries cross-admissible for identification purposes:

> I think there is an issue of identification. That will be a major issue in this case. And, because of that, the evidence of the backpack being found at the location of Count 2 during the process of a burglary with a Defendant who meets the description of the Defendant generally makes it cross-admissible on -- on Count 1.

Giving due weight to all the factors, the trial court concluded that trying the counts together was not so unfairly prejudicial as to outweigh the value of judicial economy. See Bythrow, 114 Wn.2d at 722 (defendant must not only establish prejudice but "also demonstrate that a joint trial would be so prejudicial as to outweigh concern for judicial economy.") The court did not abuse its discretion by denying severance.

## INEFFECTIVE ASSISTANCE OF COUNSEL

McKnight argues his trial counsel was ineffective for failing to object when Officer Watts testified he went to McKnight's mother's house on the night of the second burglary and Dorthea McKnight positively identified the backpack, tennis shoe, and knife found at Rae's house as her son's and confirmed McKnight had not been home. McKnight contends the testimony was inadmissible hearsay and there was no possible tactical reason for not objecting.

To prevail on this claim, McKnight must show his counsel's performance fell below that of a reasonably competent attorney and that prejudice resulted from that deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Prejudice is not established unless "there is a reasonable probability that, except for counsel's unprofessional errors, the result

of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

McKnight fails to demonstrate the requisite prejudice. Dorthea herself testified she thought the backpack Officer Watts showed her belonged to McKnight. Her testimony as to the shoe and the knife differed from Officer Watts' testimony, but that is of no import. Aside from the various documents found inside the backpack which identified McKnight, both Hermann and Lowe positively identified McKnight as the intruder they saw in the respective burglaries. We see no reasonable possibility that the result would have been different if counsel had objected to Officer Watts' testimony.

## SUFFICIENCY OF THE EVIDENCE

McKnight was charged with making or having burglar tools under RCW 9A.52.060(1) after he was searched incident to arrest at his mother's home and found in possession of a Phillips screwdriver, wrench, file, rod, and Craftsman tool. McKnight contends the testimony of the arresting officer, Emilio Villagrann, was insufficient to support the conviction because the officer testified only that these items "could be used" in a burglary, not that they definitely were burglary tools.

RCW 9A.52.060(1) makes it a crime to make or possess any "tool, false key, pick lock, . . . or implement adapted, designed, or commonly used for the commission of burglary under circumstances evincing an intent" to use such tools to commit burglary.

10

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. Salinas, 119 Wn.2d at 201.

McKnight was found in possession of the incriminating tools after he had entered his mother's house without permission through a window and she called police to have him ejected. Given these circumstances, and the officer's testimony that the tools could be used to unscrew hinges, break locks, cut window screens, and pry open doors and windows, as well as the jury's general experience with tools and how they are used, the evidence was sufficient for a rational jury to conclude McKnight possessed tools adapted, designed, or commonly used for the commission of burglary under circumstances evincing an intent to use them to commit burglary.

## STATEMENT OF ADDITIONAL GROUNDS

In a letter to the court, McKnight raises the denial of severance, evidentiary issues regarding the lack of DNA and fingerprint evidence and the credibility of witnesses, and an allegation that his jury was "tainted" because potential jurors saw him being escorted into the courtroom by an armed officer. For purposes of analysis, we will treat McKnight's letter of October 2011 as a statement of additional grounds pursuant to RAP 10.10, even though it was not designated as such.

11

McKnight's claim regarding severance was adequately addressed by his appellate attorney and fails for the reasons discussed above. This court defers to the trier of fact on issues of credibility of the witnesses and persuasiveness of the evidence. State v. J.P., 130 Wn. App. 887, 891-92, 125 P.3d 215 (2005). McKnight's claim about the incident with the armed officer is not supported by evidence in the record, so we cannot review it. See RAP 10.10(c).

Affirmed.

Becker, J.

WE CONCUR:

Leach, C.J.

Cox, J.