# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54380-0-II |
| Respondent, | |
| v. | |
| JACEE PEARL CRULL, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Jacee Crull appeals her convictions of residential burglary and third degree theft with domestic violence enhancements. With respect to her residential burglary conviction, Crull argues that (1) the State did not present sufficient evidence that she unlawfully entered or remained in a residence and that (2) the trial court commented on the evidence and directed a verdict in favor of the State in adopting the State's proposed instruction on unlawful entry. With respect to both of her convictions, Crull argues that (3) she had a constitutional right to a jury instruction on unanimity as to her manner of participation in the offenses as an accomplice or a principal and that (4) Washington's accomplice liability statute is unconstitutional on its face because it criminalizes speech protected under the First Amendment of the United States Constitution.

We hold that the evidence was insufficient to establish the unlawful entry element of residential burglary and reverse and dismiss Crull's burglary conviction. Because we reverse and

dismiss, we need not address Crull's claim regarding the unlawful entry jury instruction. We further hold that Crull did not have a right to a unanimity instruction on accomplice liability and that Washington's accomplice liability statute is not unconstitutional on its face.

Accordingly, we reverse and dismiss Crull's residential burglary conviction and affirm Crull's theft conviction.

FACTS

Crull and Buddy Brock were romantic partners beginning in 1999. In 2007, Crull and Brock purchased a home together where they lived as a family and raised Crull's children. Both Crull and Brock signed the mortgage and loan documents and were listed on the homeowners' insurance policy. During their relationship, Crull and Brock combined their income and jointly paid for bills and other necessities, including their mortgage. After moving into their home, Crull and Brock adopted two dogs.

Crull and Brock's relationship ended in February 2018. Crull had been experiencing a mental health crisis at that time. While Brock was at work, after taking some of her personal belongings out of the house, Crull sought treatment for her mental health condition in a hospital. Crull was hospitalized for six to eight hours, but she did not return to the home she shared with Brock until several days later. According to Crull, when she returned to the home, she discovered

that the locks to the residence had been changed and she broke a window to gain access to the house.[1]

In the months that followed, Crull experienced homelessness, residing in her truck with as many of her possession as she could fit in the vehicle. Meanwhile, Brock continued to live in the house. Crull continued handling the mortgage payments on the property for some time after she initially left the house, but she eventually stopped making that payment. Crull continued to make payments on the insurance for the home.

In April 2018, Crull obtained a temporary order of protection for a vulnerable adult and a domestic violence temporary protection order that prohibited Brock from entering the home. Crull noted in the temporary order of protection for a vulnerable adult that she required financial assistance to no longer experience homelessness and that her name was on the mortgage for the residence. She further explained that she hoped to obtain her "medical equipment, medications, plants, records [and] other important documents." Exhibit 7 at 3.

Brock left the house immediately after learning about the existence of the temporary orders. Crull later returned to the house, stayed for several hours to collect some of her belongings, and left. At the hearing on the temporary orders, the trial court declined to finalize the orders, finding that Crull was not a vulnerable adult and that she did not allege a specific instance of domestic violence.

---

[1] The record reflects that Brock changed the locks once after Crull left the house in February 2018. However, Brock's testimony regarding when he changed the locks is inconsistent. Brock stated that he changed the locks "[o]riginally when [Crull] moved out," and sometime after Crull returned to the property pursuant to the temporary protection orders she obtained. 2 Verbatim Report of Proceedings (Nov. 19, 2019) at 137. The parties did not resolve or otherwise address the discrepancy in Brock's testimony during trial or in their appellate briefs.

Brock returned to the residence after the temporary orders expired. Sometime later, Brock discovered several items in the home that he thought Crull would like to have, so he packed them in a box and dropped them off at a friend's house. Crull and Brock did not contact one another after Crull moved out, and they did not make any verbal agreement regarding possession of the house. Crull and Brock likewise did not resolve possession over their real and personal property through any court proceeding. And aside from temporary orders, neither party was subject to an order that prohibited contact or restrained entry to the residence.[2]

In August 2018, Crull drove with three friends from Jefferson County, where she had been residing in her truck, to her house. She tried to open the front door when she arrived, but the door was locked. One of the people who accompanied Crull jumped over the gate and went around the back of the house. That person entered the house through a sliding glass door that Brock kept open to allow the dogs to go outside while he worked. Crull, as well as the two other individuals who accompanied her, entered through the front door. Several items were removed from the home at that time. A neighbor's security camera captured the incident.

The State charged Crull with residential burglary and third degree theft. The case proceeded to a jury trial. Crull and Brock testified consistently with the facts as described above.

The State proposed an instruction on the definition of unlawful entry that included standard language from the pattern jury instruction as well as language which stated, "[w]ith a charge of burglary, the controlling question is one of occupancy or possession, rather than title or ownership, at the time the offense was committed." Clerk's Papers (CP) at 87. Crull objected to the instruction,

---

[2] The State also asserts multiple times throughout its brief that Brock moved his new fiancé into the home during this time. However, when asked whether his fiancé moved into the home, Brock answered that she had not moved in.

arguing that the non-standard language came from *State v. Schneider*, 36 Wn. App. 237, 241, 673 P.2d 200 (1983), which was distinguishable and did not support giving such an instruction. The trial court disagreed and adopted the State's proposed jury instruction over Crull's objection.

Crull also objected to the State's proposed accomplice liability instruction, arguing that it was not clear whether the State was proceeding under a theory of accomplice liability at that point. The trial court disagreed with Crull and included the instruction on accomplice liability. The instruction was the standard WPIC instruction on accomplice liability.

The jury found Crull guilty of residential burglary and third degree theft. The jury also found that Crull and Brock were members of the same household. With an offender score of 0, Crull's standard range sentence was 3 to 9 months confinement. Following the State's recommendation, the trial court granted a first time offender waiver and sentenced her to three days confinement, which was equivalent to the amount of time she had already served. The trial court granted Crull credit for the time she had served and 12 months of community custody subject to mental health evaluation and treatment based conditions.

Crull appeals.

DISCUSSION

I. UNLAWFUL ENTRY

Crull argues that to establish the unlawful entry element of residential burglary, the State was required to prove that her privilege, license, or invitation to enter a home that she owned and had previously resided in was either revoked or relinquished. Because Crull's decision to reside in her truck shortly after ending her relationship does not amount to a relinquishment of her legal right to enter the home, and because Brock could not unilaterally revoke Crull's privilege to

lawfully enter a house she owned, Crull contends that the State did not present sufficient evidence of unlawful entry to sustain her burglary conviction. We agree.

A. LEGAL PRINCIPLES

The State has the burden of proving every element of a crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When reviewing a claim challenging the sufficiency of the evidence to sustain a conviction, we ask "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *Id.* A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences arising from that evidence. *Id.*

A person is guilty of residential burglary under RCW 9A.52.025 if "with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." As defined in RCW 9A.52.010(2), "[a] person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."

Under the common law, burglary is construed as "an offense 'against the security of habitation or occupancy, rather than against ownership or property.'" *State v. Wilson*, 136 Wn. App. 596, 606, 150 P.3d 144 (2007) (quoting 3 CHARLES E. TORTIA, WHARTON'S CRIMINAL LAW § 316, at 223 (15th ed. 1995)). An individual may therefore unlawfully enter a property even where that individual owns the property. *Schneider*, 36 Wn. App. at 241. However, ownership remains a material consideration, even if it is not dispositive, "[t]o show on the record that the building burglarized is not the property of the accused." *State v. Klein*, 195 Wash. 338, 343-44, 80 P.2d 825 (1938). "Thus, in determining whether an offender's presence is unlawful, courts must turn to

whether the perpetrator maintained a licensed or privileged occupancy of the premises." *Wilson*, 136 Wn. App. at 606.

B. APPLICATION

Because Crull had a possessory interest in the property she was convicted of burglarizing, determining whether she retained a license or privilege to occupy the residence compels a more nuanced inquiry than simply resolving whether she lived in the home during the incident. In each of the cases on which the State relies, in which the evidence was deemed sufficient to establish unlawful entry of a home that the defendant owned, the State set forth evidence that the privilege to enter was either relinquished or revoked by some express agreement or legal process. *See, e.g.*, *Schneider*, 36 Wn. App. at 240; *see also State v. Stinton*, 121 Wn. App. 569, 576, 89 P.3d 717 (2004) (accepting the defendant's concession that his entry into a residence that he owned was unlawful because a protection order expressly excluded him from the residence); *State v. Kilponen*, 47 Wn. App. 912, 918, 737 P.2d 1024 (1987) (holding that evidence was sufficient to establish the defendant's unlawful entry into the family home where the defendant was subject to a restraining order that prevented him from entering the home). No such evidence was presented here.

1. Voluntary Relinquishment

Relying on *Schneider*, the State argues that Crull relinquished her privilege to enter the residence, despite her ownership interest in the property, because the evidence showed that Crull did not live in the home during the incident. *Schneider* is both inapposite and contrary to the State's assertion because it does not stand for the principal that a person who owns a property relinquishes their privilege to enter the property merely because the person does not presently reside there. *See* 36 Wn. App. at 241.

7

In *Schneider*, Schneider was convicted of burglarizing a rental home she co-owned with her husband. *Id.* at 238. After Schneider and her husband separated, Schneider's former husband moved into the rental property and resided with the same tenant who had inhabited the home prior to the couple's separation. *Id.* On appeal from her burglary conviction, Schneider argued that the State's evidence was insufficient to establish unlawful entry because the State failed to prove that the rental property did not belong to her. *Id.* at 240. We disagreed, reasoning that Schneider's ownership interest in the residence did not establish a license, invitation, or privilege to lawfully enter in that case. *Id.* at 241. We held that "Mrs. Schneider's legal status was analogous to that of a landlord's at the time of the break-in." *Id.* Emphasizing that the property had been occupied by a tenant prior to and during the burglary and that Schneider had "never actually lived in the house during the time in question," we concluded that the evidence was sufficient to establish unlawful entry. *Id.*

Here, unlike in *Schneider*, the residence at issue was not used as a rental property, there was no tenant occupying the residence prior to or during the burglary incident, and no evidence was presented that could establish a legal relationship between Crull and Brock analogous to that of a landlord and a tenant. Instead, the evidence reflects that Crull and Brock purchased the property together and lived in that home as their primary residence for approximately 11 years.

Nevertheless, the State contends that upon moving out of the home, Crull demonstrated her intent to voluntarily relinquish her possession of the residence.[3] The State points to evidence that

---

[3] To support its assertion that an individual loses the privilege to enter upon moving away from a residence, even where that individual owns residence, the States cites to and quotes extensively from *Commonwealth v. Majeed*, 548 Pa. 48, 694 A.2d 336 (1997). But *Majeed* does not support the State's assertion because that case involved an order entered by consent of the defendant and his former spouse that excluded the defendant from the residence. *Majeed*, 548 Pa. at 53.

Crull obtained temporary restraining orders excluding Brock from the residence so that she could gather her remaining belongings as establishing Crull's intent to move away permanently. Indeed, Crull testified that after the temporary orders were filed, she remained in the home for only several hours, whereas the orders were in effect for two weeks, giving rise to a reasonable inference that Crull did not intend to continue living in the home.

Although the State's evidence shows that Crull did not intend to continue to reside in the home, we disagree that this fact resolves whether Crull relinquished her privilege to lawfully enter a home that she owned. Instead, the evidence reflects that occupancy of the residence was uncertain and in a stage of transition in the period after Crull initially left the home and leading up to the incident.

The evidence presented before the trial court did not show that Crull voluntarily relinquished her right to enter the home because the record reflects that the status of the residence after Crull and Brock ended their relationship was dubious. For example, following her mental health crisis, Crull returned to her home to find that Brock had changed the locks. Brock did not inform Crull that he changed the locks, nor did he attempt to contact Crull to provide her with a new set of keys to the home that they shared for over a decade. Instead, Brock assumed that upon discovering that he changed the locks, Crull would contact him so that he could tell her "where the spare key was located outside the house so she could get in the house." 2 VRP (Nov. 19, 2019) at 151. Crull slept in her truck from that point forward and did not establish a permanent residence until several months after the incident in question. Although she took some of her belongings, Crull left other personal items in the residence, including the dogs that she adopted with Brock. Crull also continued to pay for insurance on the property while living in her truck. Most

significantly, Crull and Brock did not contact one another after Crull left the house, and they never reached an agreement regarding who among them was to continue living in the home. Nor did they reach any resolution of the ownership status over the home in a civil proceeding. Taken together, the State did not set forth sufficient evidence to support the unlawful entry element by way of Crull's voluntary relinquishment of her right to enter her own home.

2. Revocation

The State points to the fact that Brock changed the locks on the doors and removed several of Crull's possessions from the home as evidence that Brock revoked Crull's privilege to enter. In addition, the State points out that both Brock and Crull recognized that she did not have Brock's permission to enter the residence, claiming that this fact further supports its contention that Crull's privilege to enter had been revoked by Brock. We disagree that these facts demonstrate that Crull's privilege to enter her home had been revoked.

Brock could not unilaterally revoke Crull's privilege to lawfully enter her own home by forcing her out, removing her belongings, or changing the locks. In cases where unilateral revocation of a defendant's right to lawfully enter their property was upheld, revocation was substantiated through legal process. *See, e.g.*, *State v. Moran*, 181 Wn. App. 316, 322, 324 P.3d 808 (2014) (holding that although the defendant had an ownership in the house, his spouse had been awarded sole possession of the house through a divorce decree and the defendant could only

enter the residence with his spouse's permission); *see also Kilponen*, 47 Wn. App. at 918.[4] Here, Brock did not revoke Crull's right to enter her own home through any legal process.

The statutory definition of unlawful entry in RCW 9A.52.010(2) describes that element in terms of a right to enter, using language such as "privilege," "license," or "invit[ation]," to lawfully enter a premises. Notably, the statute does not define unlawful entry based on present occupation and possession, nor does the statute otherwise incorporate those terms. Contrary to the State's suggestion, under the facts here, Crull's ownership is relevant to determining whether she had a right to lawfully enter the residence. And because the State did not present evidence that Crull's right to enter her own home was relinquished or revoked by her decision to live in her truck while Brock continued to occupy the home, the evidence is insufficient to sustain Crull's residential burglary conviction.[5]

---

[4] Both parties also rely on *State v. Cantu*, 156 Wn.2d 819, 132 P.3d 725 (2006) and *State v. Steinbach*, 101 Wn.2d 460, 679 P.2d 369 (1984), two cases involving a juvenile's alleged unlawful entry into a residence belonging to the juvenile's parents, to support their respective positions as to unlawful entry. Crull argues that *Steinbach* and *Cantu* support her position that she was presumptively privileged to enter the residence, and the State argues that these same cases support its assertion that revocation need not be explicitly communicated. However, because these cases are distinguished by the particular nature of the parent/child relationship, they are not helpful in resolving the issues before us.

[5] Crull argues that the trial court improperly commented on the evidence by instructing the jury that "'the controlling question'" in determining unlawful entry is a matter "'of occupancy or possession, rather than title or ownership, at the time the offense was committed.'" Br. of Appellant at 15 (quoting CP at 37). In light of our disposition of Crull's sufficiency of the evidence claim, we need not address this issue because "[a] defendant whose conviction has been reversed due to insufficient evidence cannot be retried." *State v. DeVries*, 149 Wn.2d 842, 853, 72 P.3d 748 (2003). We nevertheless observe that the instruction here was a serious misstatement of the law because it improperly implies that Crull's ownership of the property was irrelevant. A defendant's ownership of the residence is, in fact, a relevant consideration in determining whether entry was unlawful. *Klein*, 195 Wash. at 343-44.

II. UNANIMITY

Crull argues that she was entitled to a unanimous jury verdict on whether she acted as a principle or an accomplice in the charged offenses. While recognizing that prior courts have rejected this argument because principal and accomplice participation are not alternative means of committing a crime, Crull contends that the issue has never been analyzed with respect to the rights guaranteed under the Washington Constitution. Crull analyses the six *Gunwall*[6] factors and urges us to hold that article I, section 21 of the Washington Constitution protects the right to a unanimous verdict as to the manner of participation in a given offense.

The State responds that a unanimity instruction on accomplice liability is not required and that an analysis of the six *Gunwall* factors does not yield a different result. The State asserts further that even if participation as a principal or as an accomplice are alternative means of committing a crime, the State set forth sufficient evidence to sustain Crull's conviction under either alternative. We agree with the State.

Criminal defendants have a right to a unanimous jury verdict under article I, section 21 of the Washington Constitution. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451 P.3d 707 (2019). Where the State alleges that a defendant engaged in several acts, any one of which could constitute the charged offense, there arises a danger that "some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid

---

[6] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). In *Gunwall*, the supreme court provided a mechanism by which courts analyze the scope of a Washington constitutional provision as compared to its federal counterpart, involving six factors: (1) the text of the state constitution, (2) differences in the text of parallel state and federal constitutional provisions, (3) the history of the state constitution, (4) preexisting state law, (5) structural differences between the state and federal constitutions, and (6) matters of particular state interest or local concern. 106 Wn.2d at 61-62.

conviction." *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988), *abrogated on other grounds by In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 330-31, 823 P.2d 492 (1992). We will examine an alleged unanimity issue only where the applicable statute creates alternative means of committing a single offense. *State v. Sandholm*, 184 Wn.2d 726, 732, 364 P.3d 87 (2015). In addition, where the evidence presented is sufficient to support each alternative means, "an expression of jury unanimity is not required." *Id.*

To determine whether a statute creates "alternative means," courts consider whether the statute proscribes distinct and varied conduct. *Id.* at 734. "But when the statute describes minor nuances inhering in the same act, the more likely the various 'alternatives' are merely facets of the same criminal conduct." *Id.* Under the latter circumstance, there is no unanimity issue. *Id.* at 732.

RCW 9A.08.020(1), the accomplice liability statute, provides that an individual may be held legally accountable for a crime committed by the conduct of another person. Consequently, a person who acts as an accomplice has not committed a crime separate from that committed by principal actor; instead, liability "is predicated on aid to another in the commission of a crime, and is, in essence, liability for that crime." *State v. Jackson*, 87 Wn. App. 801, 818, 944 P.2d 403 (1997) (discussing former RCW 9A.08.020 (1975)).

Washington courts have repeatedly held that participation in a crime as an accomplice or as a principal does not amount to alternative means, and an instruction on accomplice liability does not compel an instruction on unanimity. *State v. Walker*, 182 Wn.2d 463, 484, 341 P.3d 976 (2015); *see also State v. Hoffman*, 116 Wn.2d 51, 104-05, 804 P.2d 577 (1991). Acting as an accomplice as opposed to principal does not amount to an alternative means because:

> [t]he legislature has said that anyone who participates in the commission of a crime
> is guilty of the crime and should be charged as a principal, regardless of the degree

> or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant. The elements of the crime remain the same.

*State v. Carothers*, 84 Wn.2d 256, 264, 525 P.2d 731 (1974).

Crull argues that *Carothers* and *Hoffman* are not binding because neither decision addressed whether there is a right to jury unanimity on accomplice liability by analyzing the right with respect to the Washington Constitution. In addition, Crull asserts that in both cases, the defendants would have been considered principals under the common law definition because both defendants were present when the crimes were committed. Crull contends that therefore, neither decision resolved whether article I, section 21 protects the right to a unanimity instruction for a common law accomplice who was not present when the crime was committed. This argument is not well taken.

In *Carothers*, the court considered the right to unanimity for accomplice liability in conjunction with article I, section 21 of Washington's Constitution. 84 Wn.2d at 262 (citing article I, section 21 and explaining that the court will reach the unanimity issue regardless of Carothers's failure to propose an instruction or to object before the trial court because the matter "relates to the constitutional right to jury trial."). In *Hoffman,* the court also referred to a "right to jury unanimity," and although it did not expressly cite to the constitutional provision, it relied on *Carothers* in holding that the right to unanimity does not extend to accomplice liability. 116 Wn.2d at 104.

In addition, Washington courts do not distinguish between degrees of principal liability based on whether the defendant is present during the commission of the crime. *Carothers*, 84 Wn.2d at 262-64 (citing *State v. Cooper*, 26 Wn.2d 405, 414, 174 P.2d 545 (1946)). In holding

that unanimity is not required for accomplice liability, the court in *Carothers* relied extensively on *Cooper*, wherein the supreme court held that a defendant's actions in aiding and abetting in a crime, even if the defendant was not present during commission of the crime, is not an alternative means to participating as a principal. *Id.* (citing 26 Wn.2d at 414).

Although Crull correctly notes that neither court engaged in a *Gunwall* analysis, she incorrectly argues that a *Gunwall* analysis is required to determine whether a given right is protected under the Washington Constitution. The purpose of conducting a *Gunwall* analysis is to determine when it is appropriate to decide a case that implicates similar federal and state constitutional provisions on independent state grounds. 106 Wn.2d at 62. Crull's objective in analyzing the *Gunwall* factors is inconsistent with this purpose. Rather than asserting that we should proceed by analyzing the right to unanimity on state as opposed to federal grounds, Crull seeks to expand the scope of article 1, section 21.

Washington courts that have consistently held there is no right to a unanimous verdict on accomplice liability have considered the issue on independent state grounds. *See Hoffman*, 116 Wn.2d 104-05; *see also Carothers*, 84 Wn.2d at 264. Despite acknowledging that no court has engaged in a *Gunwall* analysis addressing the right to unanimity on accomplice liability, the court in *Walker* recognized that "[a] *Gunwall* analysis is appropriate where the contours of the Washington Constitution are not fully developed, but on this issue our precedent is clear." 182 Wn.2d at 484. We are thus bound by the precedent established in *Walker*, *Hoffman*, and *Carothers*, that criminal defendants are not entitled to a unanimity instruction on accomplice liability under article I, section 21. *See State v. Jussila*, 197 Wn. App. 908, 931, 392 P.3d 1108 (2017) ("This

appellate court remains bound by a decision of the Washington Supreme Court."). Thus, Crull's claim fails.

## IV. CONSTITUTIONAL OVERBREADTH CHALLENGE TO THE ACCOMPLICE LIABILITY STATUTE

Crull argues that RCW 9A.08.020, the accomplice liability statute, is unconstitutionally overbroad in violation of the First Amendment to the United States Constitution because it criminalizes protected speech.[7] RCW 9A.08.020(3)(a) provides that a person is guilty as an accomplice if "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she: (i) Solicits, commands, encourages, or requests such other person to commit it." Because the accomplice liability statute does not implicate speech protected under the First Amendment, we disagree.

A statute is overbroad in violation of the First Amendment "if it prohibits a substantial amount of protected speech." *State v. Gray*, 189 Wn.2d 334, 345, 402 P.3d 254 (2017). "'A statute that regulates behavior, not pure speech, will not be overturned 'unless the overbreadth is both real and substantial in relation to the ordinance's plainly legitimate sweep.'" *State v. Ferguson*, 164 Wn. App. 370, 375, 264 P.3d 575 (2011) (internal quotation marks omitted) (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366 (1988)). Under the United States Constitution, a state may not proscribe speech that advocates for violence or the violation of a law "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite

---

[7] The State responds that the evidence in Crull's case would not compel an instruction on the First Amendment. In so arguing, the State misapprehends Crull's facial constitutional challenge for an as-applied challenge. Crull correctly observes that "[a]n overbreadth challenge is facial, and will prevail even if the statute could constitutionally be applied to a litigant." *City of Bellevue v. Lorang*, 140 Wn.2d 19, 26, 992 P.2d 496 (2000).

or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969).

Crull contends that the accomplice liability statute contravenes the standard announced in *Brandenburg*. We have previously considered and rejected an analogous argument on several occasions. *See, e.g.*, *State v. McPherson*, 186 Wn. App. 114, 119-20, 344 P.3d 1283 (2015); *State v. Holcomb*, 180 Wn. App. 583, 589, 321 P.3d 1288 (2014); *State v. Ferguson*, 164 Wn. App. at 375–76; *State v. Coleman*, 155 Wn. App. 951, 960-61, 231 P.3d 212 (2010).

In *Coleman*, we held that because former RCW 9A.08.020 (1975) contains a mental state element that is established by evidence that the individual aided or agreed to aid in commission of a crime "with knowledge the aid will further the crime," the statutory text did not reach "protected speech activities . . . that only consequentially further the crime." 155 Wn. App. at 961. In *Ferguson*, we expounded on the reasoning in *Coleman*, explaining that "[b]ecause the statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*." *Ferguson*, 164 Wn. App. at 376. Similarly, in *Holcomb* we held that RCW 9A.08.020 is not unconstitutionally overbroad because it prohibits acts in aid of planning or committing a particular crime as opposed acts promoting general criminal activity. 180 Wn. App. at 589.

Crull urges us to decline to follow *Coleman*, *Ferguson*, and *Holcomb*, reasoning that an individual may be convicted as an accomplice under RCW 9A.08.020(3)(a)(i) for merely encouraging lawless action, regardless of whether that person intended to facilitate a crime or whether crime was likely to result, as required under *Brandenburg*. However, Crull understates

the type of conduct or speech RCW 9A.08.020(3)(a)(i) prohibits. "[R]egardless of whether the State relies on the word 'encourage' or the words 'solicit' or 'command' within RCW 9A.08.020(3)(a)(i)," to sustain a conviction on accomplice liability, "an accomplice must associate himself with the principal's criminal undertaking, participate in it as something he desires to bring about, and seek by his action to make it succeed." *State v. Jameison*, 4 Wn. App. 2d 184, 204-05, 421 P.3d 463 (2018). Accomplice liability under RCW 9A.08.020(3)(a)(i) does not extend to protected speech that involves mere encouragement of general lawless action. Thus, RCW 9A.08.020(3)(a)(i) is consistent with *Brandenburg* and is not unconstitutionally overbroad.

## CONCLUSION

Because Crull owned the home she was convicted of burglarizing and her privilege to enter the home had not been relinquished or revoked, we hold that the State failed to prove that Crull unlawfully entered her residence, and the evidence is insufficient to sustain her residential burglary conviction. We further hold that because the manner of participation in an offense as an accomplice or as a principal are not alternative means of committing a given offense, there is no right to jury unanimity for accomplice liability. Finally, we hold that Washington's accomplice liability statute is not unconstitutionally overbroad in violation of the First Amendment to the United States Constitution.

Accordingly, we reverse Crull's residential burglary conviction and order dismissal of that charge. However, we affirm her third degree theft conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 54380-0-II

CRUSER, J.

I concur:

VELJACIC, J.

MAXA, J. (dissenting in part) – I agree that Jacee Crull's third degree theft conviction should be affirmed. But I disagree with the majority opinion's conclusion that there was insufficient evidence to support Crull's residential burglary conviction.

The State presented evidence that Crull moved out of the house she co-owned with Buddy Brock in February 2018. Brock stayed in the house and made all the mortgage payments. Meanwhile, Crull moved to Jefferson County. Brock left the house in mid-April when Crull obtained a temporary order in Jefferson County removing him from the house. At that time, Crull returned to the house for a few hours to collect some belongings. She then did not return to the house until the day of the burglary. Brock resumed living in the house in mid-May after the court declined to enter a permanent order.

When Crull did return to the house on August 21, 2018, she had not lived there in over six months and apparently was living on the Olympic Peninsula several hours away. And she essentially broke into the house. The front door was locked, and she was able to enter only after one of her companions jumped over a fence and gained access to the house through a back door.

I believe that this evidence was sufficient to establish that Crull's entry in the house was unlawful and therefore that she committed residential burglary. Crull certainly could argue that she had the right to enter the house because she still was a title owner. And she may have had the "better" argument. But at some point, even a title owner loses her entitlement to enter a house at any time she pleases. A reasonable jury could have found that the entry was unlawful based on the fact that she had not lived in the house for six months, now was living several hours away, and essentially broke into the house.

However, I believe that the trial court gave an erroneous jury instruction regarding residential burglary. The court instructed the jury that for the burglary charge, "the controlling question is one of occupancy or possession, rather than title or ownership." Suppl. Clerk's Papers at 87. This instruction erroneously suggested that Crull's co-ownership of the house was irrelevant. In fact, her co-ownership was relevant to the lawfulness of her entry, although I believe that fact was not determinative. Therefore, the court's instruction misstated the law. As a result, I would reverse Crull's residential burglary conviction and remand for a new trial.

MAXA, P.J.