COMMONWEALTH of Pennsylvania,
Appellee,

v.

Kevin Blaine LEASE, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 28, 1997.
Filed Nov. 25, 1997.

Joseph B. Policicchio, Somerset, for appellant.

Susan Mankamyer, Asst. Dist. Atty., Somerset, for Com., appellee.

Before POPOVICH, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence after a jury convicted Appellant of burglary, criminal trespass and two counts of conspiracy.[1] Separately, the trial judge found Appellant guilty of the summary offense of criminal mischief.[2] Appellant was sentenced to an aggregate term of four and one-half to nine years incarceration. This direct appeal followed in which Appellant challenges the denial of his request for a mistrial and the sufficiency of the evidence supporting his burglary conviction. We affirm.

The pertinent facts may be summarized as follows: Appellant claimed that he had loaned money to Earl Sheets (Sheets) in order for Sheets to purchase marijuana. Ac-

cording to Appellant, Sheets never completed this transaction. Thus, Appellant wanted Sheets to return his money. In order to settle the dispute, Appellant contended that Sheets invited him to visit his mobile home. Appellant went to Sheets' home, but Sheets was not there. Nevertheless, Appellant and his co-defendant [3] decided to enter the mobile home.

Sheets protected his home with a video monitoring system. The monitoring system caught Appellant and his accomplice breaking down the door to Sheets' residence and roaming through the mobile home. At trial, the prosecution introduced the videotape from the monitoring system. The tape demonstrated that the door was significantly damaged during the break-in.

The case proceeded to a two-day jury trial. When the jury returned a guilty verdict on four of the charges, defense counsel asked for a poll of the jury. There were six ballot questions; the jury had returned a guilty verdict on numbers one, two, five and six.[4] Without any instruction from the judge, the clerk only polled the jurors on the questions where they returned a guilty verdict. When the first juror was polled, he answered "not guilty" to the third question. N.T., 10/30/96, at 2.153. The judge immediately called all counsel to the bench for a sidebar conference.

Defense counsel immediately moved for a mistrial: "I move for a mistrial.... I think there's ample authority that indicates that on a polling of the jury, if the response is contra to what's [on] the verdict slip ... that's grounds for a mistrial." *Id.* at 2.154. Since the judge, prosecution and defense counsel wanted to do some research before taking any further action, the jury was directed to return to the jury room. After some research and further argument, the judge denied the motion for a mistrial. He did, how-

---

**1.** 18 Pa.C.S.A. §§ 3502(a), 3503(a)(1)(ii) and 903, respectively.

**2.** 18 Pa.C.S.A. § 3304.

**3.** Appellant's co-defendant pled guilty to burglary and theft by unlawful taking. The record does not disclose whether or not he appealed.

**4.** Questions one and two asked about burglary and criminal trespass, respectively; five and six were two separate counts of conspiracy.

ever, grant a defense request for a new verdict slip.

At that point, about fifty minutes after the juror answered "not guilty," the jury was brought back to the courtroom. The judge explained to them that Pa.R.Crim.P. 1120(f), 42 Pa.C.S.A., required them to continue their deliberations in the case. Then, they were given the new verdict slip. It asked them to continue to deliberate and reach verdicts only on the charges for which they found guilt on the first verdict slip.[5] After ten minutes of further deliberation, the jury returned a guilty verdict on all three questions.

As a preliminary matter, we wish to note Appellant's non-compliance with our rules of appellate procedure. Appellant has not provided us with a "Statement of the Scope and Standard of Review," required by Pa.R.A.P. 3518, 42 Pa.C.S.A. While not fatal to his appeal, such errors weaken the strength of his brief and make this Court's review more difficult.

Appellant presents two questions for our review:

> I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT APPELLANT'S MOTION FOR MISTRIAL WHEN JUROR [sic] IN SEAT NO. 1 ANNOUNCED "NOT GUILTY" ON BEING POLLED, AND IN SENDING THE JURY BACK TO THE JURY ROOM AFTER THE INITIAL POLLING, BUT BEFORE INDICATING TO THEM THAT THEY MUST FURTHER DELIBERATE PURSUANT TO PA. R. CRIM. 1120(f) [sic]?

> II. DID THE LOWER COURT ERR IN CONCLUDING THAT THE JURY'S VERDICTS OF GUILTY AS TO THE BURGLARY CHARGE AND THE CONSPIRACY TO COMMIT BURGLARY CHARGE WERE SUPPORTED BY THE EVIDENCE, DESPITE APPELLANT'S ACQUITTAL OF THE THEFT AND RECEIVING STOLEN PROPERTY CHARGES?

Appellant's Brief at 3. We will consider each of these questions in turn.

■ Our Supreme Court has carefully enunciated the standard of review when an Appellant is alleging that a mistrial was improperly denied:

> [T]he remedy of a mistrial is an extreme one. . . . It is primarily within the trial court's discretion to determine whether Appellant was prejudiced by the event that forms the substance of the motion. Finally, it must be remembered that a mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial.

*Commonwealth v. Montgomery,* 533 Pa. 491, 496–99, 626 A.2d 109, 112–13 (1993) (citations omitted). Rule 1120(f) provides that the jury "shall be polled at the request of any party . . . if upon such poll there is no concurrence, the jury shall be directed to retire for further deliberations." Pa.R.Crim.P. 1120(f).

■ Based on this language alone, the first part of Appellant's argument is clearly incorrect. Neither the rule itself nor any authority supports his contention that a mistrial should have been immediately granted when the juror in seat one gave an answer contrary to the verdict slip. To the contrary, the rule clearly contemplates that the jury will continue deliberations in such a situation.

■ Moreover, an analysis of the circumstances surrounding the request for a mistrial reveals that Appellant was not prejudiced by the denial of his request. When the juror answered "not guilty," the trial judge immediately stopped polling the jury and asked both attorneys to approach the bench. At sidebar, defense counsel requested a mistrial. This request was based on his belief that the case law of this Commonwealth requires a mistrial when a juror gives a response contrary to the verdict slip. Only at that point did the trial judge take a recess and send the jury to wait in the jury room.

During the recess, the court and the attorneys researched the issue. While short arguments were held, defense counsel failed to produce any authority supporting his view. Thus, Appellant's request for a mistrial was

---

**5.** While the reasons why are not clear from the certified record, it seems that the two separate counts of conspiracy were listed as one general conspiracy charge on the second ballot.

denied. The judge then called the jurors back to the courtroom and instructed them to return to the jury room for further deliberations. *See* N.T., 10/30/96, at 2.164–66.

On these facts, we reject Appellant's argument that he was prejudiced when the jury was sent out of the courtroom during the recess. First, it was defense counsel's misunderstanding of Rule 1120(f) that led to the recess. If defense counsel had properly understood Rule 1120(f), the research and argument that occurred during the recess would have been unnecessary. Second, Appellant cites us no authority that supports his view. In fact, we note that juries are routinely excluded from the courtroom when trial courts hold oral argument on particular issues of law.

Additionally, Appellant alleges that the juror who answered "not guilty" was subject to pressure from the other jurors to change his mind when the jury returned to the jury room the first time. This argument is mere speculation unsupported by the record. Finally, after the recess, Appellant received exactly the instruction Rule 1120(f) requires and the modified jury ballot he requested. Therefore, the trial judge was well within his discretion when he denied Appellant's request for a mistrial.

Appellant's second contention tests the sufficiency of the evidence supporting his conviction for burglary. Specifically, he alleges that his acquittal on the theft and receiving stolen property charges, the underlying crimes of the burglary, warrant a conclusion that the burglary conviction is against the weight of the evidence.

■ In reviewing a challenge to the sufficiency of the evidence, we must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth [as verdict-winner], the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson*, 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. den.*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990).

"Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with a defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) (*quoting Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943)).

■ Our Supreme Court has explained what is required to sustain a burglary conviction in the following manner: "Once [an] Appellant has entered [a] private residence by criminal means we can infer that Appellant intended a criminal purpose based upon the totality of the circumstances.... [T]he Commonwealth is not required to allege or prove what particular crime Appellant intended to commit after ... forcible entry...." *Commonwealth v. Alston*, 539 Pa. 202, 208, 651 A.2d 1092, 1095 (1994). Thus, it is clear that the Commonwealth need not prove the underlying crime to sustain a burglary conviction.

The videotape and the damage to Sheets' mobile home were key pieces of evidence in the prosecution's case. The videotape evidence shows both the door to the mobile home "fly[ing] open" with great force and Appellant and his accomplice ransacking the mobile home. N.T., 10/29/96, at 14. Additionally, Sheets testified that his door and lock were completely broken by the forced entry. N.T., 10/30/96, at 2.63. As the learned trial judge noted, "In the instant case, the jury logically could have found that the defendant entered the mobile home with

the intent to steal, but that he did not consummate the theft after the entry." Opinion, 6/2/97, at 6. We agree.

Judgment of sentence affirmed.