J-A26039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAMIR HYMAN | : | |
| | : | |
| Appellant | : | No. 1648 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002127-2019

BEFORE:    BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED DECEMBER 7, 2021**

Tamir Hyman (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his waiver trial convictions for burglary, criminal trespass, and contempt for violating a protection from abuse (PFA) order.[1]  On appeal, he challenges the sufficiency of the evidence, under the burglary statute, 18 Pa.C.S. § 3502(a)(2), establishing his intent to commit a crime therein.  We affirm.

Appellant was charged with burglary, criminal trespass, and violation of an order or agreement.  On August 2, 2019, he waived his right to a jury trial and proceeded to trial that same day.  Amanda Green (Complainant) testified to the following facts.  Complainant had lived in her Philadelphia home for two

_____

[1] 18 Pa.C.S. §§ 3502(a)(2), 3503(a)(1)(ii); 23 § Pa.C.S. 6114(a).

years.  N.T. Trial, 8/2/19, at 24.  She and Appellant lived there together as a couple for five months.  *Id.* at 39.  In early March of 2019, Appellant physically assaulted her, choked her in her kitchen, threw her around her living room, and kicked the front and back doors.  *Id.* at 41; *see also* N.T. Sentencing, 10/18/19 at 8.  Complainant thusly ended the relationship and kicked Appellant out of her home. N.T., 8/2/19, at 25.

It is undisputed that on March 6, 2019, Complainant obtained a PFA with eviction against Appellant.  She took the PFA order to the police precinct where Appellant was in custody and gave the PFA order to an officer to deliver to Appellant.  Trial Ct. Op., 3/19/21, at 5.  Though Complainant did not personally see the officer deliver the PFA order, she received a signed affidavit of service from him.  *Id*.  Complainant kept a copy of the PFA order in her bedroom thereafter.  *Id.* at 3.

At trial, Philadelphia Police Officer Allen Reed testified to the following. At 9:00 a.m., March 8, Officer Reed and Officer Zgleszewski[2] responded to a call for a burglary in progress at the block of Complainant's home.  N.T., 8/2/19, at 11. Upon arrival, the officers saw Appellant standing in Complainant's front doorway, before he entered her home and closed the door.  *Id*. at 12.  The two officers entered the home and gave multiple verbal

---

[2] Though the record does not indicate Officer Zgleszewski's first name, Officer Reed's testimony included his badge number as additional identification.

commands for Appellant, whom they heard upstairs, to come downstairs. *Id.* at 12-13. When Appellant complied, he kept his left hand in his pocket, refusing multiple verbal commands to show both hands. *Id.* at 13. Officer Reed feared Appellant was holding a weapon and grabbed his arm, at which point Appellant grabbed the officer's hand "and tried to pull [the officer] towards him." *Id.* Officer Reed discharged his taser, but it had no effect on Appellant. The two officers eventually "were able to get control of him[,] placed him into [hand]cuffs[,]" and removed him from the house. *Id.* A witness on location positively identified Appellant as the man who "kicked in the door and made entry to the house." Trial Ct. Op. at 3.

Officer Reed then called Complainant, who was at work. N.T., 8/2/19, at 14-15. She informed Officer Reed that she had a PFA order against Appellant and kept a copy of it in her bedroom. *Id.* Officer Reed "[ran Appellant's and Complainant's] information" and found a record of the PFA order. *Id.* at 14. He then entered the home to retrieve the PFA order from Complainant's bedroom. *Id.* at 14-15.

Officer Reed further testified that the front door of the house was damaged, the lock was nonfunctional, furniture was in disarray, and clothes were "laying at the bottom of the staircase . . . between the living room and the kitchen[.]" N.T., 8/2/19, at 16, 20-21. Complainant also testified that upon returning home that day, she found pieces of wood on the floor, damage to the metal bracket on her front door, blood "smeared on the walls[ and]

dripping down the steps, food taken" from her refrigerator, and "cleaning products [taken] to clean himself up." *Id.* at 27.

Appellant did not testify at trial. The trial court found him guilty of burglary, criminal trespass, and contempt for violation of the PFA order. Pertinently, with respect to burglary, the trial court noted the Commonwealth was required to show intent to commit a crime, but that "crime doesn't necessarily have to be charged." N.T., 8/2/19, at 51. Here, the court found the Commonwealth showed that Appellant intended to commit criminal mischief, as evidenced by blood smeared on the walls and the disarray of "everything" in the house. *Id.* at 51-52. In its opinion, the trial court further opined that "Appellant entered the residence with the intent to break the active PFA, that is burglary." Trial Ct. Op. at 5.

On October 18, 2019, the trial court sentenced Appellant to two-and-a-half to five years' imprisonment, as well as five years' probation to run consecutively.

On October 28, 2019, Appellant timely filed a post-sentence motion, challenging the sufficiency of the evidence. The 120th day thereafter fell on February 25, 2020. *See* Pa. R. Crim. P. 720(B)(3)(a) (post-sentence motion will be denied by operation of law if it is not disposed of by order within 120 days of the filing of the motion). Appellant explains the ensuing procedural history, which was affected by the COVID-19 pandemic:

> On February 3, 2020, there was a scheduled hearing on the motion, but [Appellant] was not brought in from custody. Defense

- 4 -

counsel requested, and was granted, a thirty day extension pursuant to Pa.R.Crim.P. 720(B)(3)(b); thus the deadline for action on the post sentence motion became March 26, 2020. On March 16, 2020, the [Pennsylvania] Supreme Court declared a statewide judicial emergency and, in a series of orders, suspended all deadline calculations during the emergency; the Philadelphia Court of Common Pleas followed up with their own declarations.

Eventually, a hearing was held on July 24, 2020, and the motion was denied by [the trial court]. Due to a concern that the time for action on the motion may or may not have passed by that time, counsel requested that the clerk file an order of denial by operation of law on August 19, 2020. This appeal was filed August 20, 2020.

Appellant's Brief at 5 n.1 (paragraph break added).

In light of the foregoing, which neither the trial court nor the Commonwealth disputes, we deem Appellant's August 20, 2020, notice of appeal timely filed. On September 23rd, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) within thirty days, and Appellant complied.

Appellant presents the following issue for our review:

As [Appellant] only came into the house to gather his belongings and take a shower, was the evidence insufficient for conviction of burglary insofar as the Commonwealth failed to prove that he entered the house with the intent to commit a crime within?

Appellant's Brief at 4.

Appellant argues that the evidence was insufficient to establish he had any intent to commit a crime within Complainant's home to support a conviction for burglary under 18 Pa.C.S. § 3502(a)(2). Appellant's Brief at 10. Appellant asserts that he merely intended to take a shower and retrieve

his clothing, the latter of which, he states, "cannot support a burglary conviction[.]" *Id.* at 12, *citing* **Commonwealth v. Cavanaugh**, 133 A.2d 288, 291 n.2 (Pa. Super. 1957) ("The removal of the articles may or may not indicate felonious intent; this depends upon whether appellant intended to permanently deprive the owners of their property."). Appellant also argues that forcing entry into a building, itself, is not sufficient to satisfy the burglary criminal intent element. Appellant's Brief at 11. He concedes he trespassed into Complainant's home, but maintains the Commonwealth "presented no evidence that [he] had any nefarious intent when he entered the home." **Id**. Lastly, Appellant attempts to distinguish this case from **Commonwealth v. Majeed**, 694 A.2d 336 (Pa. 1997), on which the trial court opinion relied for the principle that the criminal intent element for burglary was satisfied with an intent to violate a PFA order. Appellant's Brief at 13-14. Appellant contends the **Majeed** defendant entered the home with intent to assault his family, whereas here, he entered Complainant's home to reclaim his belongings and bathe. **Id.** We conclude no relief is due.

Our standard of review is well established:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak

and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

. . . Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1074-75 (Pa. Super. 2013) (citations omitted).

The Pennsylvania Crimes Code defines the relevant subsection of burglary as follows:

A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

\* \* \*

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present. . . .

18 Pa.C.S. § 3502(a)(2).

Burglary requires a person to have a specific intent to commit a crime within the structure. *Commonwealth v. Wilamowski*, 633 A.2d 141, 142 (Pa. 1993). The Commonwealth has no burden to identify the specific crime to be committed; specific intent to commit a crime can be inferred under the totality of the circumstances. *Commonwealth v. Alston*, 651 A.2d 1092, 1094 (Pa. 1994). "While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can

infer that the person intended a criminal purpose based upon the totality of the circumstances." **Commonwealth v. Lambert**, 795 A.2d 1010, 1022 (Pa. Super. 2002) (citations omitted). Finally, knowingly violating a PFA order may satisfy the criminal intent required under the burglary statute. **Majeed,** 694 A.2d 338-39.

As both the trial court and Appellant discuss **Majeed**, we review it. In **Majeed**, the defendant violated a PFA order held by his wife and stepdaughter when he broke into their home, sexually assaulted his stepdaughter, then engaged law enforcement in an armed standoff. **Majeed**, 694 A.2d at 337. A jury found the defendant guilty of, *inter alia*, burglary. **Id.** The Pennsylvania Supreme Court granted review "to decide whether an individual can be convicted of burglarizing a home he or she owns after entering the premises in violation of a PFA Order." **Id.** at 338. The Court rejected the defendant's "contention that a PFA Order cannot form the basis of criminal liability" under the burglary statute. **Id.** It reasoned, "While indirect criminal contempt is the appropriate sanction for a violation of a PFA Order, 23 Pa.C.S. § 6114, allowing [the defendant] to escape liability for burglary would circumvent the purposes of the PFA Order." **Id.** at 339.

Here, the trial court found: "In the most basic terms Appellant entered the residence with the intent to break the active PFA, that is a burglary." Trial Ct. Op. at 5. It is undisputed that Appellant was not licensed or privileged to enter Complainant's home; Complainant specifically testified that she had

kicked Appellant out of her house because he physically abused her. N.T., 8/2/19, at 25, 32. The Commonwealth also presented evidence of the PFA order, with eviction, against Appellant. Appellant's argument that *Majeed* is distinguishable — because here, he merely intended to retrieve his clothes and take a shower — is meritless.

Furthermore, Appellant does not challenge the trial court's finding that the evidence also established an intent to commit criminal mischief. *See* Trial Ct. Op. at 5. Appellant smeared blood across the walls of Complainant's home, displaced the contents of the refrigerator, used her shower, and left her furniture in disarray, all without permission to be inside her residence. *Id.* The trial court properly reasoned that these actions establish an intent to commit criminal mischief, for purposes of the burglary law. *See id.*

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/7/2021