2026 PA Super 104

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIL BRYANT | : | |
| | : | |
| Appellant | : | No. 112 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000010-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIL BRYANT | : | |
| | : | |
| Appellant | : | No. 152 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006383-2022

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY LANE, J.: **FILED MAY 20, 2026**

Khalil Bryant ("Bryant") appeals from the judgment of sentence imposed

following his convictions for burglary and contempt of a protection from abuse

---

[*] Former Justice specially assigned to the Superior Court.

("PFA") order at docket number 10-2022,[1] and his convictions for stalking[2] and contempt of a PFA order at docket number 6383-2022.  We affirm.

We glean the following factual history from the testimony and evidence presented at trial.  In the early hours of October 16, 2021, Philadelphia Police Officer Joseph Kincaid ("Officer Kincaid") responded to a 911 call reporting that someone had broken into an upstairs apartment.  Upon arriving at the specified location, Officer Kincaid met with Attalah Woods ("Woods"), the resident of the upstairs apartment and the individual who had made the 911 call.  Woods informed Officer Kincaid that her child's father, against whom she had an active PFA order,[3] had somehow entered her apartment while she was sleeping.  Although Officer Kincaid was unable to locate Bryant or observe any signs of forced entry into Woods' residence, he nonetheless transported Woods to the police station to provide a formal report, before returning her back to her apartment and resuming his patrol.

Approximately three hours later, Officer Kincaid received another report of a break-in at Woods' apartment.  After responding with two other officers, Officer Kincaid detained a man descending the steps leading to Woods'

_____

[1] *See* 18 Pa.C.S.A. § 3502(a)(1)(ii); *see also* 23 Pa.C.S.A. 6114(a).

[2] *See* 18 Pa.C.S.A. § 2709.1(a)(1).

[3] Pursuant to this PFA order, Bryant was "completely evicted and excluded from" Woods' apartment, and he was prohibited from having any contact with Woods "by telephone or by any other means, including third persons." Commonwealth's Exhibit #3, at 2-3.

apartment. Woods subsequently identified the man to police as Bryant, and relayed that he had again broken into her residence in violation of the PFA order. Consequently, police arrested Bryant, and Officer Kincaid transported Woods to the police station to provide another formal report.

The following evening, in a similar sequence of events, Philadelphia Police Officer Kevin Krowicki ("Officer Krowicki") and his partner were on duty when they received a call that someone had broken into Woods' apartment. When the officers arrived at the apartment, Woods told them that "Bryant had broken into her house" in violation of an active PFA order, and that "he was hiding in her daughter's bedroom closet." N.T., 5/1/24, at 25. The two officers entered Woods' apartment, located the bedroom closet, and commanded Bryant to exit the closet. However, upon receiving no response to this command, Officer Krowicki opened the closet to reveal a partially unclothed Bryant. With the assistance of Woods, the officers confirmed Bryant's identity and placed him under arrest. The Commonwealth thereafter charged him with burglary, contempt of a PFA order, criminal trespass, and stalking at docket number 10-2022.[4]

Bryant's violations of the PFA order did not cease following his arrest. Instead, from "[t]he moment he was arrested[,]" he continued to contact Woods, both directly and indirectly, while in jail. *Id*. at 109. This

_____

[4] The Commonwealth did not charge Bryant for any crimes at this docket that resulted from his impermissible contact with Woods on October 16, 2021.

- 3 -

communication initially took the form of harassing phone calls made by those close to Bryant. *See id*. at 108. However, Woods eventually reported to police that Bryant had, on multiple occasions, communicated directly with her via several letters, in addition to sending her "a video, . . . a few pictures . . ., and texts" from an unknown cell phone that he managed to obtain while in jail. *Id*. at 54. In his various communications, Bryant generally attempted to coerce Woods to "get the charges dropped" by offering her money or threatening her safety. *Id*. at 113-17. Accordingly, when Woods provided police with copies of these messages, the Commonwealth filed additional charges of stalking, contempt of a PFA order, and witness intimidation at docket number 6383-2022.

The matters proceeded to a consolidated jury trial, whereupon the Commonwealth presented testimony from Officer Kincaid, Officer Krowicki, Detective Steven Paletz, and Woods, who each spoke to the above sequence of events. Bryant did not testify in his defense. At the conclusion of the trial, a jury convicted Bryant of burglary and contempt of a PFA order at docket number 10-2022, and stalking and contempt of a PFA order at docket number 6383-2022. On August 12, 2024, the trial court imposed an aggregate sentence of five and one half to eleven years' imprisonment. Bryant filed a timely post-sentence motion, which the trial court denied. Bryant then filed a timely notice of appeal, and both he and the trial court complied with the requirements of Pa.R.A.P. 1925.

Bryant raises the following issue for our review: "Was the evidence insufficient to establish burglary where the only proven intent to commit an offense within the property was contempt for violation of order or agreement, which is not a 'crime' under the statute?" Bryant's Brief at 2.

Bryant's sole claim presents a challenge to the sufficiency of the evidence underlying his conviction for burglary. A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo*, and our scope of review is plenary. ***See Commonwealth v. Johnson***, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

- 5 -

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quotations marks, brackets, and citations omitted).

A person commits the crime of burglary if he enters a building or occupied structure, with the intent to commit a crime therein, at the time of which any person is present. *See* 18 Pa.C.S.A. § 3502(a)(1)(ii). With respect to the element of intent, our Supreme Court has explained that "the Commonwealth is not required to allege or prove what particular crime [an] appellant intended to commit after" forcibly entering a "private residence by criminal means[,]" as the trier of fact "can infer that [the appellant] intended a criminal purpose based upon the totality of the circumstances" presented. *Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994); *see also Commonwealth v. Lease*, 703 A.2d 506, 509 (Pa. Super. 1997) (same).

Additionally, our Supreme Court has held that the Commonwealth may satisfy the intent element of burglary by proving that an individual entered a building or occupied structure while intending to violate the terms of a PFA order. *See Commonwealth v. Majeed*, 694 A.2d 336, 338 (Pa. 1997). In *Majeed*, the defendant and his wife were estranged. Pursuant to a PFA order protecting his wife and stepdaughter, the defendant was excluded from the marital residence, which he owned. The defendant violated the PFA order when he broke into the home, sexually assaulted his stepdaughter, and thereafter engaged law enforcement in an armed standoff. A jury found the defendant guilty of, *inter alia*, burglary. The Pennsylvania Supreme Court

granted review "to decide whether an individual can be convicted of burglarizing a home he or she owns after entering the premises in violation of a PFA Order." *Id*. The *Majeed* Court initially ruled that a defendant may be convicted of burglary with respect to a residence they own where they have no "license or privilege[] to enter the" residence. *Id*.

The *Majeed* Court thereafter ruled that a defendant's intent to violate an active PFA order may satisfy the intent element of burglary. In reaching this conclusion, the High Court relevantly rejected the defendant's "contention that a PFA Order cannot form the basis of criminal liability" under the burglary statute. *Id*. Instead, the *Majeed* Court ruled that the Commonwealth's "interest in enforcing a PFA" satisfied the intent to commit a crime element inherent to burglary because "[a] violation of a PFA is a violation of the law, a public wrong, punishable by a fine, imprisonment, or both." *Id*. at 340 n.6. The *Majeed* Court further explained:

> The purpose of the [PFA] Act is to prevent domestic violence and, concomitantly, to promote the security of the home. . . . If the only sanction for [a person's] unlawful entry were an indirect criminal contempt [charge for violating the terms of a PFA], the purpose underlying the [PFA] Act would be frustrated. Instead, application of the law of burglary (and the consequential restraint of liberty), under these circumstances, advances the purpose of the [PFA] Act by discouraging domestic violence and unauthorized invasions of the home.

*Id*. at 339.

With this established and controlling legal precedent in mind, we now turn to Bryant's contentions on appeal. Bryant initially argues that the

Commonwealth's evidence was insufficient to support his conviction for burglary because contempt of a PFA order is not a crime pursuant to 18 Pa.C.S.A. § 106 of the Crimes Code (defining a crime as an offense for which a sentence of death or imprisonment is authorized). Bryant contrasts the procedures underlying the punishment for contempt, pursuant to 23 Pa.C.S.A. § 6114, with section 106. Bryant maintains that pursuant to section 106, its definition of a crime applies to any statute that specifically declares the gradation of an offense, regardless of its title number. As such, Bryant contends that even where offenses outside Title 18 have "non-standard punishments," they are nevertheless crimes pursuant to section 106 if they invoke "a felony, misdemeanor, or summary" classification. Bryant's Brief at 12. Conversely, Bryant emphasizes that because section 6114 neither describes elements of an offense nor attributes a violation of the statute with a gradation for purposes of section 106, contempt of a PFA order is not a crime.

In this same vein, Bryant alleges that an analysis of the Pennsylvania Sentencing Guidelines, which lays out the gradation and offense gravity scores of every crime, infers an identical result. Bryant highlights that although each of the offenses listed within these sentencing guidelines includes gradations and offense gravity scores, including those crimes "defined under the Vehicle Code[,] the Controlled Substance Act[, and] other Title 23 crimes like failure to report under [s]ection 6319[,]" it notably excludes section 6114. *Id*. at

14. Bryant asserts that this exclusion aligns with the analysis within *Commonwealth v. Marks*, 268 A.3d 457, 459 (Pa. Super. 2021), wherein this Court reaffirmed the idea that "the PFA Act has its roots in equity and is *essentially civil*." Bryant's Brief at 17 (quotation marks omitted, emphasis in original). Bryant further accentuates that in *Marks*, this Court supported this distinction by identifying that PFA orders "are not issued under Title 18[,] but are instead issued under the authority of the [PFA] Act[,] codified under Title 23 on domestic relations[.]" *Id*. Thus, while Bryant concedes that "several substantive claims are included in Title 23," he stresses that such a result is proper given that "in every single instance, they are explicitly declared as such by statutory text through the inclusion of a gradation, bringing them into the definition of section 106" — something he again points out is not the case for contempt pursuant to section 6114. *Id*. at 18 (unnecessary capitalization omitted).

Lastly, Bryant asserts that his reasoning does not conflict with our Supreme Court's holding in *Majeed* because the Court did not consider whether Majeed had the intent to commit a crime upon entry, as that element was not in dispute in light of the fact that he committed several crimes after entering the home. Consequently, Bryant insists that because there is no "evidence that [he] intended to commit any separate crime while inside" Woods' apartment, the Commonwealth's evidence was insufficient to convict him of burglary. *Id*. at 19-20.

In its thorough and well-reasoned opinion, the trial court recounted the extent of Bryant's intentional, repeated violations of the PFA order, and determined that his sufficiency claim was without merit, explaining as follows:

[Bryant] here was not licensed or privileged to enter . . . Woods'[] residence. . . . Woods testified that, in addition to the active PFA, [Bryant] was aware that he was not allowed in her residence. The analysis of [*Majeed*] is therefore on-point with the instant matter. [Bryant] was prohibited by the PFA from contacting . . . Woods and from going to her residence. [Bryant], however, visited her apartment multiple times during the days of October 16th and 17th of 2021 despite . . . Woods calling the police every time he was present.

While violation of a PFA is not a criminal charge enumerated in the Title 18 Crimes Code, the Pennsylvania . . . Supreme Court['s] reasoning[ is] sound and applicable in the instant matter. . . . Woods was constantly harassed by [Bryant] and continued to be contacted in violation of the PFA. As illustrated by the texts, videos, calls, and multiple unauthorized entries to her apartment, a contempt charge would not adequately protect . . . Woods. . . . [Bryant] repeatedly violated the PFA [order] both before and after his arrest for the charges in the instant case. [Bryant] entered . . . Woods'[] apartment multiple times in a two-day span[,] including at least once in the middle of the night while she was asleep. Therefore, in line with the Supreme Court's reasoning in *Majeed*, . . . here "application of the law of burglary . . . advances the purpose of the [PFA] Act by discouraging domestic violence and unauthorized invasions of the home."

* * * *

Precedent within this Commonwealth coupled with the legislative intent as described by the Pennsylvania Supreme Court in *Majeed* . . . therefore clearly provides why a violation of a PFA is a crime sufficient to form the basis of criminal intent to sustain a conviction for burglary.

Finally, in addition to violating the PFA which serves as the crime intended to be committed within the residence, [Bryant] was also charged with stalking for the October 17th incident. . . . It is clear from the totality of the circumstances that [Bryant's]

- 10 -

intentional and repeated entries facilitated harassment and stalking of . . . Woods. Therefore, the evidence shown at trial of [Bryant's] repeated visits and entries into . . . Wood[s'] apartment may also form the basis of the criminal intent required for a conviction of burglary.

For the reasons stated herein, [Bryant's] argument that there did not exist sufficient evidence for a conviction of burglary is meritless. Knowingly violating a [PFA] order may form the basis of a crime for the purposes of burglary. Furthermore, as the Commonwealth need not enumerate the specific crime to be committed within the occupied structure, [Bryant's] general criminal intent to harass and stalk . . . Woods are independent crimes that may also form the basis of criminal intent as required by the burglary statute.

Trial Court Opinion, 5/15/25, at 9-10, 12-13 (footnotes, citations, and unnecessary capitalization omitted).

After review, we determine that the Commonweath's evidence was sufficient to support Bryant's conviction for burglary. As the trial court aptly noted, our Supreme Court's holding in *Majeed* directly controls the issue he presents on appeal. In this regard, the *Majeed* Court expressly ruled that a "contention that the Commonwealth is precluded from using a violation of the [PFA] order to create an element of burglary is meritless." *Majeed*, 694 A.2d at 340 n.6. In reaching this conclusion, the High Court ruled that the Commonwealth's "interest in enforcing a PFA" order satisfied the intent to commit a crime element inherent to burglary because "[a] violation of a PFA is a violation of the law, a public wrong, punishable by a fine, imprisonment, or both." *Id*. As we are bound by these rulings, we similarly conclude that

Bryant's claim, that his intent to violate the PFA order could not satisfy the intent element for burglary, is meritless.[5]

Moreover, as the trial court also pointed out, Bryant was fully aware of the PFA order and its specific prohibition against being at Woods' apartment, as well as its prohibition against any direct or indirect contact with Woods, when he broke into her residence multiple times between October 16th and 17th. Despite his first arrest for violating the PFA order on October 16th, Bryant returned the next day to once more gain entry into Woods' apartment in violation of the PFA order. Following his second arrest for the violation of the PFA order, Bryant continued to violate the PFA order by indirectly communicating with Woods through other individuals, and thereafter directly communicating with her through letters, as well as text messages, photos, and a video that he sent from an unknown cell phone which he obtained while in jail — all in an effort to coerce Woods to drop the contempt charges.

_____

[5] Even if *Majeed* did not require this outcome, we would still determine that Bryant's sufficiency claim fails in light of the fact that the Commonwealth was "not required to allege or prove what particular crime" he intended to commit to support its burglary charge. *Alston*, 651 A.2d at 1095; *see also Lease*, 703 A.2d at 509. As the trial court emphasized in its opinion, it could infer the existence of a "criminal purpose" for the purposes of the burglary statute from "the totality of the circumstances." *Id*. Accordingly, because the trial court found that Bryant's "intentional and repeated entries" into Woods' apartment facilitated a "general criminal intent to harass and stalk" Woods, it is of no consequence that the Commonwealth failed to convict him of either of the other criminal charges which arose out of the same incident. Trial Court Opinion, 5/15/25 at 12-13; *see also Alston*, 651 A.2d at 1095; *Lease*, 703 A.2d at 509.

Bryant's repeated violations of the PFA order clearly represent the type of criminal wrongdoing discussed by our Supreme Court in **Majeed**, and of which the PFA Act is designed to prevent.

In sum, because we determine that Bryant's sole issue on appeal is meritless, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/20/2026